OTIS COMPANY *v.* LUDLOW MANUFACTURING COMPANY.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 73.   Argued March 1, 2, 1906.—Decided March 12, 1906.

Where the Federal question is distinctly set up in the bill, and insisted on at every stage, and the state court could not have decided as it did without overruling the claim, this court has jurisdiction to review the judgment on writ of error.

In determining whether a statute of a State is constitutional, this court cannot wholly neglect the long-settled law and common understanding of that State, and will not, under the Fourteenth Amendment, upset what has long been established and accepted. Even the incidents of ownership may be cut down by the peculiar laws and usages of a State.

Under the Massachusetts Mill Act the right of the lower owner only becomes complete when the land is flowed, and then it is only a right to maintain a dam subject to paying the upper owners for harm actually done, in pursuance of the terms of the act. In a suit at equity brought by the upper owner to restrain the lower owner from building a dam, the state court having declared generally that the Mill Act is valid, but not having definitely expressed itself as to its constitutionality, and as the opinion of this court may depend upon the interpretation of the act by the state court, *held*, that the bill should be dismissed without prejudice, or retained until plaintiff's rights have been determined in an action for damages under the statute pending in the state court.

THE facts are stated in the opinion.

*Mr. Boyd B. Jones,* with whom *Mr. Charles L. Gardiner* and *Mr. John J. Winn* were on the brief, for plaintiff in error:

Whether the state court considered or failed to consider the Federal questions is immaterial. These questions were in fact presented by the record and argued by the plaintiff, and the judgment in the case necessarily involved a decision of them. A refusal or failure to consider a Federal question is equivalent to a decision against the Federal right involved therein. *Erie R. R. Co.* v. *Purdy,* 185 U. S. 148; *Des Moines Nav. & R. Co.* v. *Iowa Homestead Co.,* 123 U. S. 552.

A riparian proprietor on a non-navigable stream has the exclusive private right to the use of its waters as they flow through his land, and such right is parcel of the land and as sacred as the right to the soil over which they flow. *Watuppa Reservoir Co.* v. *Fall River,* 147 Massachusetts, 548, 560, 561; *S. C.,* 154 Massachusetts, 305; *Fitch* v. *Stevens,* 4 Met. 426; *King* v. *King,* 7 Massachusetts, 496; *Ingraham* v. *Wilkinson,* 4 Pick. 268, 271; *Drake* v. *Hamilton Woolen Mill Co.,* 99 Massachusetts, 574, 581; *Commonwealth* v. *Vincent,* 108 Massachusetts, 441, 446, 447; *Merrifield* v. *Worcester,* 110 Massachusetts, 216; *Maynard* v. *Northampton,* 157 Massachusetts, 218; *Fales* v. *Easthampton,* 162 Massachusetts, 422; *Sprague* v. *Dorr,* 185 Massachusetts, 10.

A riparian proprietor has a private right to use the natural fall of the stream as it passes through his land for hydraulic purposes, and may maintain an action of tort for damages, or a bill in equity to enjoin the continuance of the obstruction to the flow, or may enter upon the premises of the wrongdoer and abate the nuisance. *Williams* v. *Nelson,* 23 Pick. 141, 142; *Hill* v. *Sayles,* 12 Met. 142; *S. C.,* 4 Cush. 549; *S. C.,* 12 Cush. 454; *Tourtellot* v. *Phelps,* 4 Gray, 370, 376; *Pratt* v. *Lamson,* 2 Allen, 275; *Smith* v. *Agawam Canal,* 2 Allen, 355; *Brigham* v. *Wheeler,* 12 Allen, 89, 90; *Drake* v. *Hamilton Woolen Co.,* 99 Massachusetts, 574, 581; *Clapp* v. *Herrick,* 129 Massachusetts, 292; *Otis Co.* v. *Ludlow Mfg. Co.,* 186 Massachusetts, 89.

Setting the waters back is actionable as a violation of a pri-

vate right even though unaccompanied by actual damages. *Ludlow Mfg. Co.* v. *Indian Orchard Co.*, 177 Massachusetts, 61.

The Mill Act takes away the common law right of the landowner to abate a dam which flowed his land as well as his right to have the flowing enjoined by a court of equity. *Fuller* v. *Chicopee Mfg. Co.*, 16 Gray, 43; *Gould* v. *Boston Duck Co.*, 13 Gray, 442.

The right of the plaintiff to use its land for general purposes, and its right as a riparian proprietor to make use of the stream for hydraulic purposes, are property rights within the meaning of the due process of law clause of the Fourteenth Amendment. *Kaukauna Water Power Co.* v. *G. B. & M. Canal Co.*, 142 U. S. 254; *Boom Co.* v. *Patterson*, 98 U. S. 403; *Chicago &c. R. R. Co.* v. *Chicago*, 166 U. S. 226; *Wynehamer* v. *People*, 13 N. Y. 378; *Heard* v. *Middlesex Canal*, 5 Met. 81; *Mill Corporation* v. *Newman*, 12 Pick. 467.

Whether an interference with property rights is a taking of property within the due process of law clause of the Fourteenth Amendment, is a Federal and not a local question. *Chicago, B. & Q. R. R.* v. *Chicago*, 166 U. S. 226, 241; *Mo. Pac. Ry. Co.* v. *Nebraska Co.*, 164 U. S. 403; *Smyth* v. *Ames*, 169 U. S. 466.

Flowing the land of another under the authority of a mill act or other statute so as to deprive the owner of riparian rights, or so as to exclude him from the beneficial use of the land itself, or taking the right so to flow by such authority, is a taking of property within the due process of law clause of the Fourteenth Amendment, entitling the owner to compensation.

Flowing the land of another is such a taking. *Pumpelly* v. *Green Bay & M. Canal Co.*, 13 Wall. 166; *Head* v. *Amoskeag Co.*, 113 U. S. 9, 26; *United States* v. *Lynah*, 188 U. S. 445; *Mill Corp.* v. *Newman*, 12 Pick. 467, 478, 482; *Sinnickson* v. *Johnson*, 17 N. J. L. 129; *Eaton* v. *B. C. & M. R. R.*, 51 N. H. 504; *Arimond* v. *Canal Co.*, 31 Wisconsin, 316; *Lee* v. *Pembroke Iron Co.*, 57 Maine, 481, 488; *Ingram* v. *Water Co.*, 98 Maine, 566, 572.

An owner is deprived of his property when he is deprived

of the right to use and enjoy it. *Edwards* v. *Bruorton,* 184 Massachusetts, 529; *Howe* v. *Weymouth,* 148 Massachusetts, 605; *In re Wall St.,* 17 Barb. 617; *Portland* v. *Lee Sam,* 7 Oregon, 397; *Driver* v. *Western Union · Tel. Co.,* 32 Wisconsin, 569; *Forster* v. *Scott,* 136 N. Y. 577; *Whyte* v. *Kansas,* 22 Mo. App. 409; *Isele* v. *Schwamb;* 131 Massachusetts, 337.

A right taken is to be paid for without regard to time when or the extent to which the taker may see fit to exercise it. *Newton* v. *Perry,* 163 Massachusetts, 319; *Imbescheid* v. *Old Colony R. R. Co.,* 171 Massachusetts, 209.

The Mill Act, Mass. Pub. Sts. c. 190, authorizes depriving a person of property without due process of law within the meaning of the Fourteenth Amendment, because, as interpreted by the state court, it authorizes the taking of the property of another without notice to the owner thereof, by acts of occupation, like the making of the excavation in the present case, so unintelligible and ambiguous as to utterly fail to indicate how much of the property of the owner was or is to be taken, or even that any of his property is to be injuriously affected. See *Pumpelly* v. *Green Bay & M. Canal Co.,* 13 Wall. 166, and cases *supra,* and *Gloucester* v. *Gloucester Water Supply Co.,* 179 Massachusetts, 365; *Brickett* v. *Haverhill Aqueduct Co.,* 142 Massachusetts, 394.

This Mill Act also violates the Fourteenth Amendment because it does not make adequate provision for just compensation to the owner thereof for property taken under the authority of said act.

Adequate provision for making just compensation to the owner of property taken is required by the due process of law clause of the Fourteenth Amendment. *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, 241; *Williams* v. *Parker,* 188 U. S. 491; *Mt. Hope Cemetery Proprietors* v. *Boston,* 158 Massachusetts, 509, 519.

If adequate provision for payment of compensation be made, possession of property or enjoyment of right taken may be had before such payment. *Cherokee Nation* v. *Southern Kansas*

*R. R.*, 135 U. S. 641; *Backus* v. *Ft. St. Union Depot Co.*, 169 U. S. 557; *Sweet* v. *Rechel*, 159 U. S. 380; *Williams* v. *Parker*, 188 U. S. 491. But the owner is entitled to reasonable, certain and adequate provisions for obtaining compensation before his occupancy is disturbed. *Cherokee Nation* v. *So. Kansas R. R. supra*; *Norwood* v. *Baker*, 172 U. S. 269, 277.

A provision that compensation shall be paid by an individual or business corporation, but affording merely a right of action to obtain it, does not satisfy the constitutional requirement. *Attorney General* v. *Old Colony Ry.*, 160 Massachusetts, 62, 90; *Ash* v. *Cummings*, 50 N. H. 591; *Steinhart* v. *Superior Court*, 137 California, 575; *Howe* v. *Norman*, 13 R. I. 488; *Powers* v. *Bears*, 12 Wisconsin, 213, 221; Lewis, Eminent Domain, §§ 457, 458.

A provision that compensation shall be paid by the State, county, or city of permanent solvency, supported as it is by public faith and credit, and not "liable to go up and down like that of an individual," is security within the constitutional requirement. *Williams* v. *Parker*, 188 U. S. 491, 504; *Smeaton* v. *Martin*, 57 Wisconsin, 364, 376; *Great Falls Mfg. Co.* v. *Garland*, 25 Fed. Rep. 521, 529; Cooley Const. Lim., 7th ed., 816. It is not sufficient that the provisions for compensation are such that it will probably be paid. *Conn. River R. R. Co.* v. *County Commissioners*, 127 Massachusetts, 50.

The intimations of this court are fully in accord with the decisions that the responsibility of a private person or corporation is not an adequate fund. *Williams* v. *Parker*, 188 U S. 491; *Sweet* v. *Rechel*, 159 U. S. 380, 406.

The Massachusetts Mill Act, Pub. Sts., c. 190, violates the Fourteenth Amendment because it denies the owner of vacant land any compensation whatever for the loss caused by flowing under the authority of said act of that portion of its market value arising from its adaptability for mill purposes. *Fuller* v. *Chicopee Mfg. Co.*, 16 Gray, 43; *Boom Co.* v. *Patterson*, 98 U. S. 403; *Fales* v. *Easthampton*, 162 Massachusetts, 422; *Watuppa Reservoir Co.* v. *Fall River*, 147 Massachusetts, 548.

This Mill Act is also unconstitutional because under its provisions one riparian owner is authorized, by an act of occupation of his land, to thereby acquire the right to flow the land of an upper proprietor, and at a later date to abandon such taking without flowing and without liability to the upper proprietor for damages resulting from such taking, and because it does not give the owner of property taken a right to compensation simultaneous with the taking, but makes such right dependent upon the future volition of the taker. Pub. Stats., c. 190, § 4; *Thompson* v. *Moore*, 2 Allen, 350; *Storm* v. *Manchaug Co.*, 13 Allen, 10; *Palmer Co.* v. *Ferrill*, 17 Pick. 58.

An upper proprietor in such case is restricted in the use and enjoyment of his land, between the commencement of occupation of a mill-site and the abandonment thereof by another, because he cannot improve his land without danger of loss of the value of such improvements by flowage. This liability to loss is a prohibition against the use and enjoyment of his land, which, unless just compensation be provided therefor, is unconstitutional. *Re Wall St.*, 17 Barb. 617; *Portland* v. *Lee Sam*, 7 Oregon, 397; *Forster* v. *Scott*, 136 N. Y. 577; *Driver* v. *Western Union Tel. Co.*, 32 Wisconsin, 569; *Edwards* v. *Bruorton*, 184 Massachusetts, 529; *Whyte* v. *Kansas*, 22 Mo. App. 409.

This Mill Act also violates the due process of law clause of the Fourteenth Amendment, because it authorizes the flowing of the land of another and his consequent exclusion from the use thereof for the time between the flowing and the filing and recording of the verdict, usually a period of at least two years, without first requiring the payment of the damages caused during that period. *Stuart* v. *Palmer*, 74 N. Y. 183; *Montana Co.* v. *St. Louis M. & M. Co.*, 152 U. S. 160.

The Mill Act also violates the due process of law clause of the Fourteenth Amendment, because it fails to require the payment in advance of damages accruing after the date of such verdict, or to provide any certain and definite fund out of which such damages shall be paid.

The doctrine announced in the Supreme Judicial Court to

the effect that an interference with the rights of a landowner, which forces him either to have his lands flowed by a lower owner or to incur the expense of building an embankment and thereby flow it to the same extent, is not a taking, is opposed to the decisions of this court and is generally condemned by courts of other jurisdictions. *Turner* v. *Nye*, 154 Massachusetts, 579, 586; *Kenison* v. *Arlington*, 144 Massachusetts, 456, 457; *Isele* v. *Bank*, 135 Massachusetts, 142, 144; *Isele* v. *Schwamb*, 131 Massachusetts, 337; *Chase* v. *Sutton Mfg. Co.*, 4 Cush. 152, 169; *Boston & Roxbury Mill Corp.* v. *Newman*, 12 Pick. 467; *Talbot* v. *Hudson*, 16 Gray, 417, 425, 426; *Avery* v. *Vermont Electric Co.*, 75 Vermont, 235; Lewis, Eminent Domain, § 183.

The State, in the exercise of the police powers, may prohibit, without compensation to the owner, any use of property injurious to the health, morals, or safety of the community; but it cannot take such property without adequate provision for compensation, and much less can it, without compensation, deprive an owner of the right to the beneficial enjoyment of his property for general purposes in order that another person may use such property for a single purpose. *Austin* v. *Tennessee*, 179 U. S. 343, 344; *Commonwealth* v. *Alger*, 7 Cush. 53, 84; *Sweet* v. *Rechel*, 159 U. S. 380, 398; *Smyth* v. *Ames*, 169 U. S. 466; *Miller* v. *Horton*, 152 Massachusetts, 544; *Bent* v. *Emery*, 173 Massachusetts, 495; *Yates* v. *Milwaukee*, 10 Wall. 497; *Pumpelly* v. *G. B. & M. Canal Co.*, 13 Wall. 166; *Barney* v. *Keokuk*, 94 U. S. 324.

The Massachusetts Mill Act violates the Fourteenth Amendment because it authorizes the taking of private property for private purposes. *Cole* v. *LaGrange*, 113 U. S. 1; *Fallbrook Irrigation Dist.* v. *Bradley*, 164 U. S. 112; *Missouri P. R. Co.* v. *Nebraska*, 164 U. S. 403.

Taking property from one party who holds it for public use, by another, to hold it for the same public use, is a violation of the Fourteenth Amendment. *Cary Library* v. *Bliss*, 151 Massachusetts, 364.

Present conditions may be considered in determining the constitutionality of an act which under former or other conditions might have been valid. *Clark* v. *Nash,* 198 U. S. 361; *Stowell* v. *Flagg,* 11 Massachusetts, 364.

This court is unaffected by considerations of contemporaneous construction and acquiescence which have led different state courts to diverse conclusions. *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 239; *Scott* v. *Toledo,* 36 Fed. Rep. 385, 395, 396.

*Mr. James B. Carroll* and *Mr. William H. Brooks,* with whom *Mr. Walter S. Robinson* was on the brief, for defendants in error:

There was no Federal question before the court. The real controversy related to the question of whether the owner who first commenced or who first finished his dam was entitled to relief. It was a question of construction of the act and not its validity. *Comm. Bank of Cincinnati* v. *Buckingham,* 5 How. 317, 343; *Walker* v. *Sauvinet,* 92 U. S. 90; *Central Land Co.* v. *Laidley,* 159 U. S. 103; *Knox* v. *Exchange Bank,* 12 Wall. 379.

If a Federal question was involved the plaintiff waived it. By proceeding under the particular statute it acquiesced in its validity. *Hale* v. *Lewis,* 181 U. S. 473; *Electric Co.* v. *Dow,* 166 U. S. 489; *Eustis* v. *Bolles,* 150 U. S. 361; *Pitkin* v. *Springfield,* 112 Massachusetts, 509; *Baker* v. *Braman,* 6 Hill, 47; *Dewhurst* v. *Allegheny,* 95 Pa. St. 437.

A party who seeks in the state court to litigate rights and is given an opportunity to do so, cannot raise a Federal question simply because he is unsuccessful. *Remington Paper Co.* v. *Watson,* 173 U. S. 443; Cooley on Const. Lim., 6th ed., 214; Bigelow on Estoppel, 689; *Wright* v. *Wilkin,* 4 D. G. & J. 141.

The plaintiff is not entitled to relief because guilty of laches. *Whitney* v. *Union Railroad Co.,* 11 Gray, 359.

The decision of the state court was not in fact or necessarily based on any Federal question, and if the state court could

have rendered judgment upon grounds not involving a Federal question this court will not take jurisdiction.. *Klinger* v. *Missouri*, 13 Wall. 257; *Jenkins* v. *Loewenthal*, 110 U. S. 222; *Chouteau* v. *Gibson*, 111 U. S. 200; *Hammond* v. *Johnston*, 142 U. S. 73; *Eustis* v. *Bolles*, 150 U. S. 361.

The Mill Acts of Massachusetts, Pub. Stats., c. 190, are in accord with the constitution of that Commonwealth, and have been assumed to be so by the highest court of the State for more than one hundred years without dispute.

In cases where the question has been directly raised, the validity of the statutes known as the "Mill Acts" has been sustained and they have been declared constitutional. *Murdock* v. *Stickney*, 8 Cush. 113; *Hazen* v. *Essex Company*, 12 Cush. 475; *Lowell* v. *Boston*, 111 Massachusetts, 454; *Turner* v. *Nye*, 154 Massachusetts, 579. This being the construction of these statutes by the highest court of the State, such construction is conclusive on the Federal Supreme Court on a writ of error to the state court. *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112; *Noble* v. *Mitchell*, 164 U. S. 367; *Carstairs* v. *Cochran*, 193 U. S. 11; *Walker* v. *Sauvinet*, 92 U. S. 90; *Merchants' & Mfrs. Natl. Bank* v. *Pennsylvania*, 167 U. S. 461; *Rasmussen* v. *Idaho*, 181 U. S. 198, 200; *Morley* v. *Lake Shore & Michigan Southern R. R.*, 146 U. S. 162.

The Mill Acts of Massachusetts are not in violation of the Fourteenth Amendment of the Constitution of the United States. *Head* v. *Amoskeag Mfg. Co.*, 113 U. S. 9. They have been in existence with little change since the statute of 12 Anne, c. 8.

They were enacted to enhance the wealth of the Commonwealth, for the public welfare, for the promotion of and increase of industries and manufactures, and incidentally for the discouragement of controversies between riparian proprietors and for the regulation of the rights of property owners upon streams adaptable for power purposes.

The enactment was a legitimate exercise of legislative authority within the scope of its power to provide for the welfare

and prosperity of the people of the State. *Head* v. *Amoskeag Mfg. Co.,* 113 U.'S. 9, 26; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112; *Wurts* v. *Hoagland,* 114 U. S. 606; *Barbier* v. *Connolly,* 113 U. S. 27; *Manigault* v. *Springs,* 199 U. S. 473.

No title to the land flowed is acquired by· a lower proprietor under this Mill Act, and no land is taken thereby. The landowner cannot obtain damages for an alleged restriction on the use of his land by the contemplated raising of the water thereon or thereover, until the flowage caused by the· raising of the waters of the stream by the dam of the lower proprietor actually takes place.

It is also true that before the water is raised by the dam of the lower proprietor, the upper proprietor may dike, embank or dig canals on his own land. See *Williams* v. *Nelson,* 23 Pick. 141; *Murdock* v. *Stickney,* 8 Cush. 113; *Storm* v. *Manchaug Co.,* 13 Allen, 10; *Manigault* v. *Springs,* 199 U. S. 473; *Wurts* v. *Hoagland,* 114 U. S. 606; *Barbier* v. *Connolly,* 113 U. S. 27.

Plaintiff waived any notice of defendant's acts to which it might have been entitled. *Allen* v. *Charlestown,* 111 Massachusetts, 123, 124 ; *Holt* v. *City Council of Somerville,* 127 Massachusetts, 408, 410; *Gately* v. *Old Colony R. R. Co.,* 171 Massachusetts, 494; *Appleton* v. *Newton,* 178 Massachusetts,· 277, 281; *Lancy* v. *Boston,* 185 Massachusetts, 219, 221; *Sweet* v. *Rechel,* 159 U. S. 380.

If an upper proprietor has notice at any stage of the proceedings his rights are fully protected. *Spencer* v.· *Merchant,* 125 U. S. 345; *C., B. & Q. R. R. Co.* v. *Nebraska,* 170 U. S. 57; *Cincinnati, N. O. & T. P. R. R. Co.* v. *Kentucky,* 115 U. S. 321.

Having actually received notice of the acts of appropriation of the defendant the plaintiff is not entitled to relief, by reason of the fact that the Mill Act may not in terms contain a provision requiring notice. · *Tyler* v. *Judges of Registration,* 179 U. S. 405; *C., B. & Q. R. R. Co.* v. *Nebraska,* 170 U. S. 57; *Reetz* v. *Michigan,* 188 U. S. 505; *Detroit &c. Railway* v. *Os-*

*born,* 189 U. S. 383. Notice is a local question. *Castillo.* v. *McConnico,* 168 U. S. 674.

The Mill Act accords constitutional compensation for damages sustained. *Otis Co.* v. *Ludlow Mfg. Co.,* 186 Massachusetts, 89; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9; *Morley* v. *Lake Shore R. R.,* 146 U S. 162; *Manigault* v. *Springs,* 199 .U. S. 473. The principles or elements of damages cannot be considered here. The only question for consideration here is whether the plaintiff has been deprived of due process of law.

The plaintiff has had the process of law due according to the law of the land and therefore "due process of law." *Marchant* v. *Pennsylvania R. Co.,* 153 U. S. 380, 385; *Davidson* v. *New Orleans,* 96 U. S. 97; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 157, 158; *Walker* v. *Sauvinet,* 92 U. S. 90; *Kennard* v. *Morgan,* 92 U. S. 480.

A decision that as between riparian proprietors priority of occupation gives the better right is not contrary to the Fourteenth Amendment of the Constitution of the United States. The question of fact that was decided in favor of the defendant cannot be reviewed by this court. *Backus* v. *Ft. Street Union Depot Co.,* 169 U. S. 557, 566.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity to restrain the defendants in error from flooding the plaintiff's land by means of a dam erected under the Massachusetts Mill Act. The injunction is asked on alternative grounds—either that the Mill Act does not authorize the dam, or that, if it does, then it is contrary to the Fourteenth Amendment of the Constitution of the United States. The case was tried in the Superior Court and reported to the Supreme Judicial Court, which held that the statute authorized the dam and was valid, and ordered the bill be dismissed. 186 Massachusetts, 89. A decree was entered in accordance with the rescript and the case then was brought here. The claim under the Constitution was distinctly set up

in the bill, and was insisted on at every stage. The court could not have decided as it did without overruling that claim, so that the jurisdiction of this court is clear, although it was denied.

The dam in question is built across the Chicopee River, a non-navigable stream, at Red Bridge. It was begun, in pursurance of a long previous determination, on August 3, 1899, and was completed within a reasonable time. The plaintiff owned a mill and dam, more than two miles above, and land below its dam on the two sides of the watercourse, down to within about two miles from the principal defendant's dam. On April 4, 1900, the plaintiff determined to build a dam near its lower boundary, and began the work of construction on August 11 of the same year. This dam was completed before, although it was begun after, the defendants', and will be rendered nearly or wholly useless by the back flow from the defendants' structure. The plaintiff's original dam and mill will not be interfered with. The Supreme Judicial Court decided that under the statute then in force, Pub. Stats., c. 190, § 2, the principal defendant, herein called the defendant, acquired the prior right, and that the statute was constitutional. It postponed the consideration of the plaintiff's rights in reference to damages, but decided that the provision for compensation was adequate to satisfy whatever rights the plaintiff might have.

The only question which it is necessary for us to consider is whether the act as construed violates the Fourteenth Amendment.—General objections to Mill Acts as taking property for private use or on other grounds have been disposed of by *Head* v. *Amoskeag Manufacturing Co.*, 113 U. S. 9. See further *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527. Such acts have been in force in Massachusetts ever since an act of 1714, c. 15. 1 Prov. Laws, 729. The practice sanctioned by them would seem from the recitals of that act to have been still older. It may have begun with grist mills and may have had its justification in the public needs which exempted from military watch-

ings and warnings one miller to each grist mill; act of 1693, c. 3, § 13; 1 Prov. Laws, 130; and in the public duties which were expressed in the act of 1728, c. 6, § 3; 2 Prov. Laws, 497. But at all events, the liability of streams to this kind of appropriation and use has become so familiar a conception in New England, where water power plays as large a part as mines in Utah, that it would not be very extravagant to say that it enters as an incident into the nature of property in streams as there understood.

However, the liability of upper land to be flowed is not a liability to be flowed without payment. The principal objection made to the law is that it makes no adequate provision for payment, if it is construed as it has been construed by the state court. There has been no substantial change in the form of this provision for the better part of a century. It reads: "A person whose land is overflowed or otherwise injured by such dam, may obtain compensation therefor upon his complaint before the superior court for the county where the land or any part thereof lies; but no compensation shall be awarded for damages sustained more than three years before the institution of the complaint." Pub. Stats., c. 190, § 4. The jury is to take into consideration damage to other land as well as the damage to the land overflowed. Section 14. It is to assess the damages sustained within three years, § 16, and to determine what sum, to be paid annually, would be reasonable compensation for the damages that may be occasioned thereafter, and also a sum in gross for all damages from the use of the dam in the manner fixed by it, § 18, the jury having power to regulate the height of the dam. Section 17. The complainant is given an election to take the gross sum, in which case the owner of the dam loses all benefit of the act after three months until he pays. Sections 19, 20. Otherwise the complainant has an action for the annual compensation and a lien on the dam and lands used with it. Section 21 *et seq.* And, finally, if dissatisfied with the amount of the annual compensation, he may bring a new complaint. Section 30.

In considering whether these provisions are sufficient it is important to know exactly what the upper owner loses by the dam. The state court lays it down that there is no taking under the right of eminent domain. 186 Massachusetts, 95. We assume this to mean what often has been said with regard to the Mill Acts, that under them no easement or title of any kind is gained in or over the upper land, and that the water could be diked out, *Storm* v. *Manchaug Co.*, 13 Allen, 10, 13; *Lowell* v. *Boston*, 111 Massachusetts, 454, 466; although the language has not been uniform and it seems to have been held otherwise when the damages are paid in gross. *Isele* v. *Arlington Five Cents Savings Bank*, 135 Massachusetts, 142. Taking the law to be as stated by the court, it would follow that only the damage physically suffered is to be paid for. When a title is taken, for instance, to the waters of a stream, it is held that the whole value of the title must be paid, although a considerable use may be left in fact to the party aggrieved. *Howe* v. *Weymouth*, 148 Massachusetts, 605; *Imbescheid* v. *Old Colony Railroad Co.*, 171 Massachusetts, 209. Flowage under the Mill Acts seems to be regarded as presenting the converse case. As no title is gained to have the water on the upper land, the dam owner pays only for the harm actually done from time to time. If this is so, somewhat less elaborate provisions might be justified than could be sustained when the title is lost. So far as security goes, looking to the reasonable probabilities in such cases, it would seem to be sufficient. We must bear in mind, as we presume the state court meant to suggest by its citation of the case of *Brickett* v. *Haverhill Aqueduct Co.*, 142 Massachusetts, 394, 397, that, as was said there in words that need but little change, if other remedies proved ineffectual, the "court would, by proceedings in equity, restrain the defendant from a further use of the water, and, if necessary, order the removal of the dam." In other words, the right to an injunction, if necessary, is taken into account in Massachusetts, in deciding whether the security for payment is sufficient, even when there is a taking by eminent domain. See

also *Attorney General* v. *Old Colony Railroad*, 160 Massachusetts,. 62, 90; *Manigault* v. *Springs*, 199 U. S. 473, 485, 486. This seems an answer to the objection that in the state of the business of the courts a judgment for past damages may not be recorded for several years, that the defendant may be insolvent, the dam inadequate security, and valuable improvements destroyed. It is said that the lower owner might abandon his dam and thereby escape liability for gross damages after an election to take them. But we presume that in that case he would be held to pay the temporary damage caused and the case would stand like one where the choice had been the other way. *Hunt* v. *Whitney*, 4 Met. 603, 608.

Again, we cannot wholly neglect the long settled law and common understanding of a particular State in considering the plaintiff's rights. We are bound to be very cautious in coming to the conclusion that the Fourteenth Amendment has upset what thus has been established and accepted for a long time. Even the incidents of ownership may be cut down by the peculiar laws and usages of a State. *Eldridge* v. *Trezevant*, 160 U. S. 452, 466. For a century the remedy given by the statute has been supposed to be sufficient, and in 1832 it was decided to be so under a somewhat similar statute which was held to create a servitude. *Boston & Roxbury Mill Corporation* v. *Newman*, 12 Pick. 467. We are not prepared to pronounce the statute void on the ground that the security for payment is not enough.

But it is argued that not all the serious damage which is, or may be, suffered is compensated. It is said that only damages caused by flowing can be recovered. But the cases cited only show that damages regarded as too remote on general principles are disallowed, *Fuller* v. *Chicopee Manufacturing Co.*, 16 Gray, 46, or that not being within the protection of the Mill Acts they are to be recovered by an action at common law. *Eames* v. *New England Worsted Co.*, 11 Met. 570. And the statute now expressly provides for a "person whose land is overflowed or otherwise injured," § 4, and that the jury

shall take into consideration any damage occasioned to other land as well as that to the land overflowed. Section 14. A graver doubt is raised by another argument. It is decided that the prior right is gained by the dam first begun, provided it is completed and put in operation within a reasonable time. If, as in the present case, the upper owner builds a dam in the meantime, it may be held that he is entitled to no compensation for its being rendered useless, even if he builds without notice of the earlier appropriation, as well might happen. On the other hand if he refrains from using his land as he desires, he may be denied compensation for being deprived of the use of his land. We do not perceive why the latter result should follow. As to the former it may be held that, notwithstanding the priority of the lower owner, the upper owner has a right to improve his land until it actually is flowed. Otherwise the former might have it in his power to keep the latter in suspense for a year or two and then abandon his dam. Because the plaintiff was too late to prohibit the defendant's dam it does not follow that it may not be entitled to all the damages which it suffers when the flowing takes place. That it would be entitled to them perhaps may be inferred from *Baird* v. *Wells*, 22 Pick. 312, decided under a different statute but still applicable so far as this principle is concerned. See further *Storm* v. *Manchaug Co.*, 13 Allen, 10, 15; *Edwards* v. *Bruorton*, 184 Massachusetts, 529, 532.

The state court has confined itself to a general declaration that the act is valid and has not expressed itself definitely upon these points. Yet our opinion upon the constitutional question may depend upon its interpretation of the statute in a case which could not be brought here. Obviously it would be unjust that the plaintiff should be concluded upon a doubtful construction assumed by us which the state court hereafter may not adopt. Therefore it seems to us proper that this bill should be dismissed without prejudice, or retained until the plaintiff's rights shall have been determined in the proceedings for damages under the statutes, which it is admitted have been

brought. The objection to the act on the ground of want of notice does not impress us except in its bearing upon the point just mentioned. The right of the lower owner only becomes complete when the land is flowed, and, as, even then, it is not a right to maintain the water upon the plaintiff's land, but merely a right to maintain the dam subject to paying for the harm actually done, we see nothing to complain of in that regard.

*Decree modified and affirmed.*