HENRY FORD & SON, INCORPORATED, *v.* LITTLE
FALLS FIBRE COMPANY ET AL.

No. 47. Argued December 4, 1929.—Decided January 6, 1930.

*Mr. Charles E. Nichols, Jr.,* with whom *Messrs. Robert E. Whalen, Clifford B. Longley,* and *Wallace R. Middleton* were on the brief, for petitioner.

*Messrs. George E. O'Connor, Thomas O'Connor,* and *Gerald W. O'Connor* were on the brief for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on writ of certiorari to review a determination of the Court of Appeals of New York, 249 N. Y. 495, upon which a judgment was entered in the state Supreme Court, awarding damages and an injunction restraining petitioner from maintaining flashboards on the crest of the " Federal Dam," constructed in the Hudson River near Troy, New York, under acts of Congress. Act of June 25, 1910, 36 Stat. 630, c. 382, March 4, 1913, 37 Stat. 801, c. 144.

Respondents, it is stipulated, are riparian owners on the Mohawk River, above its confluence with the Hudson, where at a point about three miles above the Federal Dam they own a dam and water power which they maintain for the development of power for use in their factories on adjacent land. The petitioner, a private business corporation, has procured from the Federal Power Commission a license for a hydro-electric power project, purporting to be granted under the Federal Water Power Act of June 10, 1920, 41 Stat. 1063 (U. S. C., Title 16, c. 12). The license granted permission to use surplus water from the Federal Dam for the development of power at a plant to be constructed and maintained by petitioner for that purpose, on government land. As the license also per-

mits, but does not require, petitioner has placed flash-boards on the crest of the dam which, under normal conditions, raise the level of the water in the pool above the dam approximately two feet. Electric power developed by the project is used in the business of an affiliated private manufacturing corporation. The maintenance of the water at the new level has resulted in materially raising the water at the tail-races of respondents' power plants, with a corresponding reduction of the head of water and of the power developed at their dam.

As the court below held, the acts complained of constitute, under local law, an actionable wrong, entitling respondents to an injunction and to damages. *Hammond* v. *Fuller,* 1 Paige (N. Y.) 197; *Brown* v. *Bowen,* 30 N. Y. 519; *Hall* v. *Augsbury,* 46 N. Y. 622, 625, 626; *Rothery* v. *New York Rubber Co.,* 24 Hun. 172, aff'd 90 N. Y. 30; *American Woolen Co.* v. *State,* 195 App. Div. (N. Y.) 698, 705. To avoid this liability petitioner relies on the federal right or immunity specially set up by its answer, that the Hudson and Mohawk are navigable rivers; that all of the acts complained of were done under the license and authority of the Federal Power Commission and under regulations of the Secretary of War, authorized by the Water Power Act; that the license and the acts of petitioner authorized by it were found by the Commission to be desirable and justified in the public interest for the purpose of improving and developing the Hudson River for the benefit of interstate commerce, and that the petitioner, acting under the license, is an agency of the Federal government, in the exercise of its power to regulate commerce and navigation.

It is contended that the navigable capacity of the Hudson and the Mohawk is subject to the regulation and control of Congress, under Clause 3 of § 8, Art. I, of the Constitution, *Gibbons* v. *Ogden,* 9 Wheat. 1; *Gilman* v. *Philadelphia,* 3 Wall. 713, 724; *United States* v. *Chandler-*

*Dunbar Co.,* 229 U. S. 53, 63; *New Jersey* v. *Sargent,* 269 U. S. 328, 337, which may constitutionally be delegated to the Power Commission; cf. *Wisconsin* v. *Illinois,* 278 U. S. 367, 415; that even if the finding of the Commission that the licensed project is in aid of commerce and navigation is not conclusive, as petitioner asserts it is, and even though some of the power developed by petitioner is used for private purposes, the raising of the level of the water by the use of flashboards is shown by the evidence to be beneficial to navigation, and it was therefore within the competency of the Commission to determine whether the project should be authorized. It appears that the petitioner is required by the license and its acceptance of it to supply from the licensed project, power in specified amounts for the lighting and operation of the existing government lock and a second projected lock at the Federal Dam, which are instrumentalities of navigation.

It is argued that Congress, by the Federal Water Power Act, has authorized the Commission to develop navigation and for that purpose to establish obstructions in navigable waters and, subject only to the constitutional requirement of compensation for property taken, its power when so exercised is supreme; that the present exercise of that power does not amount to a taking of the respondents' property for the reason that it does not appear that the obstruction has so raised the water as to flood the respondents' land, and any right of theirs recognized by the state and asserted here, to have the river flow in its natural manner without obstruction, is subordinate to the power of the national government exerted by the Commission through its licensee, whose action so far as it affects respondents' water power, is *damnum absque injuria. United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53; *Gibson v. United States,* 166 U. S. 269, 271; *Scranton* v. *Wheeler,* 179 U. S. 141, 162, 163; *Lewis Blue Point Oyster Co.* v. *Briggs,* 229 U. S. 82; see *Fox River*

*Paper Co.* v. *Railroad Commission,* 274 U. S. 651; *Chase-Hibbard Co.* v. *City of Elmira,* 207 N. Y. 460; compare *United States* v. *Cress,* 243 U. S. 316.

The respondents insist, as the court below found, that the Federal Dam was designed to be sufficient for purposes of navigation without the flashboards and it was unnecessary to use them for purposes of navigation; that the petitioner had installed them for the development of power for its own private use; that the effect upon navigation of the power plant and flashboards is negligible, hence the licensed project was not one authorized under the Federal Water Power Act. In any case, it is urged that the injury and damage complained of amount to a taking of respondents' property without compensation and, further, that the Federal Water Power Act, by its terms, does not authorize the granting of licenses which would enable the licensee to destroy or affect the rights of riparian owners.

But, in the view we take of the application of the Federal Water Power Act to the present case, it is unnecessary to decide all the issues thus sharply raised. Whether the Commission acted within or without its jurisdiction in granting the license, and even though the rights which the respondents here assert be deemed subordinate to the power of the national government to control navigation, the present legislation does not purport to authorize a licensee of the Commission to impair such rights recognized by state law without compensation. Even though not immune from such destruction they are, nevertheless, an appropriate subject for legislative protection. See *United States* v. *Realty Co.,* 163 U. S. 427; *Guthrie National Bank* v. *Guthrie,* 173 U. S. 528, 535; *Joslin Co.* v. *Providence,* 262 U. S. 668, 675, 676; *Otis* v. *Ludlow Co.,* 201 U. S. 140, 152; *Oswego & Syracuse R. Co.* v. *State,* 226 N. Y. 351, 356. Especially is there reason for such protection where, as here, their sacrifice may be involved

in the grant of a valuable privilege to a licensee. We think that the provisions of the Act are quite sufficient in themselves to save respondents from any such appropriation of their water power.

Section 10(c) (U. S. C., Title 16, § 803(c)) provides that licensees " shall be liable for all damages occasioned to the property of others by the construction, maintenance or operation " of the licensed project and by § 27 (U. S. C., Title 16, § 821) it is provided, " Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective states relating to the control, appropriation or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein." By § 21 (U. S. C., Title 16, § 814), licensees are given the power of eminent domain and authorized to conduct condemnation proceedings in district or state courts for the acquisition " of the right to use or damage the lands or property of others necessary to the construction, maintenance or operation of any dam . . . [or] . . . diversion structure . . ." in connection with an authorized project which they are unable to acquire by contract. By § 6 (U. S. C., Title 16, § 799), all licenses are required to be " conditioned upon acceptance by the licensee of all the terms and conditions of this Act."

While these sections are consistent with the recognition that state laws affecting the distribution or use of water in navigable waters and the rights derived from those laws may be subordinate to the power of the national government to regulate commerce upon them, they nevertheless so restrict the operation of the entire act that the powers conferred by it on the Commission do not extend to the impairment of the operation of those laws or to the extinguishment of rights acquired under them without remuneration. We think the interest here asserted by

the respondents, so far as the laws of the state are concerned, is a vested right acquired under those laws and so is one expressly saved by § 27 from destruction or appropriation by licensees without compensation, and that it is one which petitioner, by acceptance of the license under the provisions of § 6, must be deemed to have agreed to recognize and protect. Whether § 21, giving to licensees the power of eminent domain, confers on them power to condemn rights such as those of respondents, and whether it might have been invoked by the petitioner in the present situation, are questions not before us.

*Affirmed.*